UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

---

In re:

    TIMOTHY RENEE THOMAS,
    aka TIMOTHY-RENEE: THOMAS,    Misc. Proceeding No. 16-MP-2001
    (NYS DOC Inmate No. 06509701 P),

                Petitioner.

---

**DECISION AND ORDER
DIRECTING CLERK OF COURT TO REJECT
CURRENT AND FUTURE INVOLUNTARY PETITIONS
SUBMITTED BY TIMOTHY RENEE THOMAS *PRO SE*
[NYS DOC INMATE NO. 06509701 P]**

PAUL R. WARREN, United States Bankruptcy Judge

    The Bankruptcy Code allows a creditor to file an *involuntary* bankruptcy petition against an alleged debtor. *See generally* 11 U.S.C. § 303. In other words, a creditor can drag a debtor into a bankruptcy proceeding. This Miscellaneous Proceeding reminds the Court that an involuntary bankruptcy petition—submitted by an alleged creditor against an alleged debtor as a nefarious weapon intended to harass—when combined with the immediate availability of that information on the Court's internet-accessible dockets (including the fact that an involuntary petition has been filed in the name of an alleged debtor), can make for a very dangerous entrée—served up to damage or destroy the target's financial good standing and personal reputation.

    On January 25, 2016, the Clerk of the Bankruptcy Court in Buffalo ("Clerk") received in the day's mail a proposed involuntary petition from Timothy Renee Thomas ("Petitioner"). Attached to the involuntary petition was a seven-page, rambling, handwritten document titled "Statement of Facts," along with several handwritten letters offered as exhibits (collectively

"Submissions"). After observing that the proposed involuntary petition was deficient in several technical respects, and did not include any filing fee, and appeared to have been submitted by an inmate in a New York State prison, and—most troublingly—specifically named as the alleged debtor an elected governmental official serving in Rochester, as well as other governmental officials and several governmental bodies, the Clerk requested guidance from the Court on whether to accept the Submissions for filing in the Court's electronic case management system. A few days later, while the Court was drafting this decision, the Clerk received two additional involuntary petitions (collectively "Petitions") from Mr. Thomas, which included identical Submissions. These latest proposed Petitions specifically named, as alleged debtors, two other governmental officials serving in Rochester (collectively "Targets").

After thorough *in camera* review of Petitioner's three proposed Petitions and accompanying Submissions, the Court is convinced that the Petitions have been submitted solely to harass, injure, damage, or destroy the financial good standing and personal reputation of each of the intended Targets. The Clerk is directed to **REJECT AND NOT FILE ON THE DOCKET** the Petitions or Submissions from Petitioner. The originals of the Petitions and Submissions received to date from Petitioner are to be **SEALED**. The Petitioner is **PROHIBITED AND ENJOINED** from attempting to file any involuntary bankruptcy petition in the United States Bankruptcy Court for the Western District of New York, **UNLESS** signed, under Rule 11 FRCP, by an attorney licensed to practice law in the State of New York and admitted to practice before the Federal Courts for the Western District of New York. Should Petitioner violate this prohibition, the Clerk is authorized to shred any offending submissions. The Clerk is directed to deliver a copy of the Petitioner's Petitions and Submissions (in an envelope marked "confidential") to the United States Attorney and the United States Marshal for

the Western District of New York, for review and investigation, in collaboration with those New York State governmental bodies having custody of Petitioner.

## I.  FACTS

On December 29, 2003, Timothy Renee Thomas arrived at the Great Meadow Correctional Facility—a maximum security prison—to begin serving a 20-year sentence imposed by the New York State Courts following a felony conviction.[1]  Thirteen years later,[2] perhaps in an effort to exact retribution for his incarceration and have revenge on those he sees as his captors—governmental officials (such as the district attorney, police officials, private attorneys, judges, the Governor, and the Attorney General) and entire governmental bodies (such as the federal government, state government, and all levels of the state courts)—Mr. Thomas mailed to the Clerk three proposed involuntary bankruptcy petitions naming—with great specificity—three

---

[1] Mr. Thomas (NYS DOC Inmate No. 06509701 P) was convicted of first and third degree felony rape of a minor following a jury trial.  He filed a direct appeal to the Appellate Division, Fourth Department, which unanimously affirmed his conviction in 2008. *See People v. Thomas*, 53 A.D.3d 1099 (N.Y. App. Div. 2008).  He then moved for leave to appeal that decision, but the New York Court of Appeals denied the motion. *See People v. Thomas*, 11 N.Y.3d 795 (N.Y. 2008).  Petitioner then filed a petition for writ of habeas corpus, which was considered and denied by the Honorable Michael A. Telesca for the United States District Court for the Western District of New York in 2011. *See Thomas v. Conway*, No. 08-CV-6853 (MAT), 2011 U.S. Dist. LEXIS 5800 (W.D.N.Y. Jan. 21, 2011) (describing in vivid detail the events leading to his arrest and conviction).  The Court takes judicial notice of these prior proceedings relating to Petitioner's criminal conviction and his many efforts to escape the consequences of that conviction.  The proposed involuntary bankruptcy petitions before this Court are just the latest effort by Petitioner to fashion a key to unlock his jail cell.

[2] "Vengeance and retribution require a long time; it is the rule."  Charles Dickens, *A Tale of Two Cities* 102 (1904).

of those Targets.[3]  The Petitioner asserts—in a rambling fashion, spiced with generous amounts of confused legal jargon—that the proposed involuntary debtors violated commercial law in that "they will not let me, Timothy-Renee: Thomas the flesh and blood, Private Man upon the land to discharge himself from this debt or criminal charges" (ECF No. N.A./SEALED).  The Petitioner claims he is owed $12,500,000 in compensatory and punitive damages and demands immediate release from prison in lieu of payment.  As exhibits to the Petitions, the Petitioner provided copies of a series of handwritten letters he had sent to certain of the targeted officials.  Collectively, the letters claim that Petitioner is a creditor with a UCC financing statement for the property—that property consisting of the physical body of "Timothy R. Thomas"—and Petitioner repeatedly threatens to file an involuntary bankruptcy petition against the Targets if proof of a valid security interest in that "property" is not provided to the Petitioner (*Id.*).

In keeping with the Court's (Rochester Division) policy of requiring *in camera* judicial review of *any* proposed involuntary bankruptcy petition *before* filing in the Court's internet-accessible case management system ("CM/ECF")—to head off a petitioner's attempt at indirect identity hijacking, where the ultimate goal of a petitioner may be to damage a target's financial good standing or personal reputation—the Clerk requested judicial review and instructions concerning Petitioner's Petitions and Submissions.  The matter was assigned to the Rochester Division for consideration because the primary Targets live and work here.

---

[3]   The names of the Petitioner's intended Targets are not being disclosed by the Court, to avoid potential harm to their financial good standing and personal reputations.  As advertisements repeatedly remind us, FICO Scores matter.  Instead, the Court has opened this Miscellaneous Proceeding in the name of Timothy Renee Thomas, as Petitioner.

4

Case 2-16-02001-PRW    Doc 2    Filed 01/29/16    Entered 01/29/16 17:10:58    Desc Main
Document      Page 4 of 10

## II. CONCLUSIONS OF LAW

In 11 U.S.C. § 303(b), Congress set out the elements required for commencement of an involuntary bankruptcy case by creditors against a proposed debtor:

> (b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—
>
> (1) by three or more entities, each of which is either a holder of a claim against such person that is *not contingent as to liability or the subject of a bona fide dispute as to liability or amount*, or an indenture trustee representing such a holder, if such noncontingent, undisputed claims aggregate at least $15,325 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;
>
> (2) *if there are few than 12 such holders*, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a) of this title, *by one or much of such holders that hold in the aggregate at least $15,325 of such claims* (emphasis added).

Read together, § 303(b)(1) and (2) require that where the proposed involuntary debtor has fewer than twelve creditors—as here—the petitioning creditor must have a claim in the aggregate amount of at least $15,325, and that claim cannot be "*contingent as to liability or the subject of a bona fide dispute as to liability or amount.*" *Id.* (emphasis added); *see also* 2 *Collier on Bankruptcy* ¶ 303.08 (16th ed.); *In re Risby*, No. 4:08-mp-101 E, 2008 Bankr. LEXIS 13, at *6 (Bankr. E.D. Ark. Jan. 7, 2008); *In re Knight*, 380 B.R. 67, 73 (Bankr. M.D. Fla. 2007); *In re Walsh*, 306 B.R. 738, 742-43 (Bankr. W.D.N.Y. 2004).

Petitioner's circuitous and perplexing Submissions make evident, on their face, that his purported claim in the amount of $12,500,000 is—without doubt—"subject to a bona fide dispute as to liability or amount." The amount of Petitioner's claim is based on his personal estimation of the value of "Petitioner's wasting assets (body)" as a result of his incarceration. No evidence is provided to support the claimed amount, and the Court is confident that no

5

evidence could possibly prove the value of his specious claim. Reading Petitioner's Submissions—in the most charitable light in recognition of his *pro se* status—it is apparent to the Court that the basis of Petitioner's claim is without any legal merit. In his seven-page Statement of the Case, Petitioner points to the Uniform Commercial Code, contract law, securities law, the law of commercial paper, bankruptcy law, and international law all in support of his fanciful argument that he has been "deprived of life, liberty and the pursuit of happiness, [he] also has been commercially damaged, as well suffered the damage inherent in unlawful detainment of imprisonment of wasting assets (my body)" (ECF No. N.A./SEALED). When viewed through a lense focused on Petitioner's previously unsuccessful legal maneuvers to avoid the consequences of his criminal conviction, the Petitioner's attempt to file involuntary bankruptcy cases against the Targets he names—but the Court will not name—is yet another attempt to win reversal of his conviction and—failing that—to wreak financial and personal havoc on the officials or entities he believes to be responsible for his incarceration. While not the province of this Court, one must wonder whether Petitioner has made any real effort to rehabilitate himself during his lengthy incarceration. It would seem not. The Court finds that, based on its *in camera* review of the record as a whole, the Petitioner's proposed Petitions are without merit, vexatious, frivolous, and abusive. *See Risby*, 2008 Bankr. LEXIS 13, at *6; *see also Walsh*, 306 B.R. at 742-43.

With the advent of CM/ECF beginning in 2001, the federal courts' internet based case management system makes public to the world court dockets, including the names of debtors—both voluntary and involuntary—and nearly all filed documents. It goes without saying that instantaneous access to court dockets can provide a portal for those intent on doing harm to the

6

reputation, dignity, or credit of "targets," if not carefully handled.[4] Because the mere docketing of the Petitioner's proposed Petitions on the Court's internet based case management system could negatively affect the targeted involuntary debtors' financial credit standing or personal reputation, under 11 U.S.C. § 107(c), the Court directs the Clerk of Court to **REJECT** the Petitions and to place the original Petitions and Submissions under **SEAL**. *See Risby*, 2008 Bankr. LEXIS 13, at *10-12 (rejecting abusive involuntary petitions filed by *pro se* prisoner against government officials and entities under 11 U.S.C. § 107(c)); *Walsh*, 306 B.R. at 742-43 (holding that *pro se* involuntary petitions should be withheld from public availability until reviewed by the Court); *In re President of the United States*, 88 B.R.1, 2-3 (Bankr. D. D.C. 1985) (discussing circumstances in which rejecting a proffered involuntary petition is proper).

Although the Clerk must ordinarily accept and make publicly available bankruptcy petitions submitted for filing, Congress has provided an important exception to that general rule in 11 U.S.C. § 107(c):

> (c)(1) The bankruptcy court, for cause, may protect an individual, with respect to the following types of information to the extent the court finds that disclosure of such information would create undue risk of identity theft or other unlawful injury to the individual or the individual's property:
>
> > (A) Any means of identification (as defined in section 1028(d) of title 18) contained a paper filed, or to be filed, in a case under this title.
> >
> > (B) Other information contained in a paper described in subparagraph (A).

Here, the exceptional act of rejecting the Petitioner's abusive Submissions and not making them publicly available is warranted, given the harm that would likely be worked on the proposed

---

[4] "I have always had more dread of a pen, bottle of ink, and a sheet of paper than a sword or pistol." Alexandre Dumas, *The Count of Monte Cristo* 23 (1846). That being so, might the Count of Monte Cristo have had a *paralyzing dread* were that sheet of paper to be digitalized and then launched into cyber space for all the world to read instantly? Certainly, he would.

involuntary debtors should the information (including their names) be made public on the internet—including negative impacts on FICO credit ratings and the cost to retain counsel to attempt to repair that damage. *See, e.g., Walsh*, 306 B.R. at 741 (where a government attorney was named as a proposed involuntary debtor and had her credit card cancelled without notice—but with considerable embarrassment and requiring herculean efforts to expunge her credit report—when credit card company learned of involuntary petition, even though no Order for Relief was ever entered and despite the fact that the involuntary petition was promptly dismissed and the petitioner sanctioned); *see also Risby*, 2008 Bankr. LEXIS 13, at *11. As *Walsh* unfortunately demonstrated to this Court, the mere act of opening a proposed involuntary petition in the name of the target, followed by dismissal of the petition and monetary sanctions against the filing party, cannot effectively undo the financial and personal harm to the target. It is simply not possible for a Court to un-ring the bell or for a victim to put the genie back in the bottle.

Additionally, as was observed by the court in *Risby*, rejection of the Petitioner's involuntary petitions is justified as an appropriate remedy because of his unique status as a prisoner, acting *pro se*:

> Under the Court's Case Management Electronic Filing System ("CM/ECF"), Petitioner's proffered abusive petitions, if docketed, would have been instantaneously available to anyone over the internet who was willing to pay a fee. *Furthermore, Petitioner's status as a convict representing himself effectively renders the usual penalties of monetary sanctions and dismissal of the proffered involuntary petitions meaningless, since his goal of harassment would be complete as soon as such petitions are electronically filed and made public. He can therefore attempt to file such frivolous matters unfettered by the usual constraints that would apply to an attorney, or indeed, to any other non-incarcerated private citizen acting pro se.* . . . While the principle of open access to court proceedings and records is tremendously important, to have merely accepted and docketed Petitioner's submissions in this age of electronic filing and

8

instant public availability would certainly have subjected scores of individuals to gratuitous abuse at Petitioner's hands.

*Risby*, 2008 Bankr. LEXIS 13, at *11-12 (emphasis added). While the Court could dismiss the case under 11 U.S.C. § 303, after allowing the Petitions to be filed—and after putting the Targets to the trouble and expense of making a motion to dismiss—the circumstances here justify additional protections for the proposed involuntary debtors—Mr. Thomas's intended victims in this case. The Court finds, under 11 U.S.C. §§ 107(c) and 105(a), that sanctions against the Petitioner are warranted, including rejection of his three Petitions, a permanent prohibition against his filing additional involuntary petitions unless signed, under Rule 11 FRCP, by an attorney licensed to practice in New York and admitted to practice in the Federal Courts for the Western District of New York, and a referral to the United States Attorney and the United States Marshal for the Western District of New York, for review and investigation in collaboration with those New York State governmental bodies having custody of Petitioner.

### III. CONCLUSION

Upon careful consideration of the Petitions and Submissions and under 11 U.S.C. §§ 107(c) and 105(a), it is hereby

**ORDERED**, that the Clerk is directed to **REJECT AND NOT FILE ON THE DOCKET** the Petitions submitted by Timothy Renee Thomas. The originals of the Petitions and Submissions received to date are to be **SEALED**; and it is further

**ORDERED**, that Petitioner is **PROHIBITED AND ENJOINED** from attempting to file any involuntary bankruptcy petition in the United States Bankruptcy Court for the Western District of New York, **UNLESS** signed, under Rule 11 FRCP, by an attorney licensed to practice

9

law in the State of New York and admitted to practice before the Federal Courts for the Western District of New York; and it is further

**ORDERED**, that should Petitioner violate this prohibition, the Clerk is authorized to shred offending submissions from Petitioner; and it is further

**ORDERED**, that the Clerk is directed to deliver a copy of the Petitioner's Petitions and Submissions (in an envelope marked "confidential") to the United States Attorney and the United States Marshal for the Western District of New York, for review and investigation, in collaboration with those New York State governmental bodies having custody of Petitioner.

**IT IS SO ORDERED.**


DATED: January 29, 2016 _____/s/_____
      Rochester, New York        HON. PAUL R. WARREN
                                      United States Bankruptcy Judge

10

Case 2-16-02001-PRW    Doc 2    Filed 01/29/16    Entered 01/29/16 17:10:58    Desc Main
Document      Page 10 of 10